# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8015 | **DATE** | July 17, 2001 |
| **CASE TITLE** | *Thomas vs. General Motors Acceptance Corp., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendants' motion to dismiss plaintiff's amended complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A). This case is dismissed with prejudice. Any pending motions are denied as moot. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | JUL 1 8 2001 | |
| | Notices mailed by judge's staff. | date docketed | 41 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | JUL 1 8 2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CW | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 01 JUL 17 PM 5: 23 | mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANK THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 00 C 8015 |
| ) | |
| GENERAL MOTORS ACCEPTANCE ) | Judge James H. Alesia |
| CORPORATION, GENERAL MOTORS ) | |
| CORPORATION, DONALD HOUCK, ) | |
| ROGER BACKON, KAY CANDIANO, ) | |
| JOHN FLEURY, JAMES A. MILLER, ) | |
| HOLLY A. GEORGELL, ) | |
| J. A. EDWARDS, JR., J. E. GIBSON, ) | |
| J. D. FINNEGAN, and J. A. MARTIN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the court is a motion filed by defendants General Motors Corporation, General Motors Acceptance Corporation, Donald Houck, Kay A. Candiano, John D. Fleury, J. E. Gibson, and J. D. Finnegan (collectively "defendants") to dismiss plaintiff Frank Thomas's amended complaint with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(A), as a sanction because he provided false information about his financial status on his application to proceed *in forma pauperis*.[1] For the following reasons, the court grants defendants' motion.

---

[1] Defendants have also filed a motion to dismiss plaintiff's amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the court finds that 28 U.S.C. § 1915(e)(2)(A) provides a sufficient basis for dismissing the case with prejudice, the court does not address defendants' alternative motion.

## I. BACKGROUND

Plaintiff Frank Thomas ("Thomas") lost his job with General Motors Acceptance Corporation in October 1999, after about twenty-nine years of employment with the corporation. He is now suing defendants under the Employee Retirement Income Security Act ("ERISA").

On or about December 21, 2000, Thomas filed a complaint pro se, an application to proceed *in forma pauperis* ("IFP application"), and a motion for appointment of counsel in this case. On his IFP application, Thomas stated that he had been unemployed since October 4, 1999; had no cash, checking, or savings accounts; and that he owned no property besides an automobile valued at $500.00. Thomas signed the IFP application, declaring "under penalty of perjury that the above information is true and correct." On January 3, 2001, the court found Thomas indigent and granted his IFP. On the same date, the court denied Thomas's motion for appointment of counsel because he failed to answer all the questions on the form regarding his attempts to retain counsel, and the court gave Thomas until February 5, 2001 to submit a completed motion for appointment of counsel.

On January 10, 2001 Thomas filed a completed motion for appointment of counsel, and it was granted on January 19, 2001. However, on April 12, 2001 the court granted the motion of Thomas's appointed attorney to withdraw as attorney for Thomas.[2] On May 10, 2001, Thomas filed an amended complaint pro se.

---

[2]On April 12, 2001, in open court, Thomas's appointed attorney stated that he sought to withdraw because he and Thomas had reached an impasse regarding the monetary value of Thomas's case.

2

Currently before the court is defendants' motion to dismiss Thomas's amended complaint with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(A) because Thomas misrepresented his poverty on his IFP application. The court has afforded Thomas an opportunity to respond.[3]

## II. DISCUSSION

Section 1915(e) of Title 28 mandates that a district court "*shall* dismiss the case" if the court learns, at any time, that the IFP applicant's "allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A) (emphasis added); *Mathis v. Southwest Partners, Inc.*, Nos. 95 C 6073, 96 C 3075, 1998 WL 774827, at *1 (N.D. Ill. Oct. 23, 1998). The Seventh Circuit has concluded that district courts have discretion to decide whether such a dismissal will be with or without prejudice. *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547-48 (7th Cir. 1998); *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 756 (7th Cir. 1988). A court may dismiss a case with prejudice to sanction an IFP applicant who has intentionally deceived or misled the court. *See New York Life Ins. Co.*, 133 F.3d at 547-48 (affirming dismissal with prejudice of complaint as sanction for attempting to deceive the court).

Here, defendants allege that Thomas intentionally misrepresented his financial status in his IFP application. First, defendants explain, Thomas failed to disclose that on December 12, 2000 – nine days before he filed his IFP application– Thomas had requested a lump sum

---

[3]In his response brief, Thomas alleges that defendants' memorandum in support of their motion to dismiss contains false statements with no factual basis, and Thomas asks the court to sanction defendants pursuant to Federal Rule of Civil Procedure 11. However, because the court finds the allegations in defendants' motion are not only credible but also supported by affidavit, the court denies Thomas's motion for sanctions.

3

retirement distribution of $73,714.00.[4] Second, defendants explain, Thomas failed to disclose that, in the year before filing his IFP, he had earned net amount of $15,645.31 as a participant in the Separation Allowance Plan and the Savings-Stock Purchase Program.[5] An affidavit of Roger Bacon ("Bacon"), the Human Resources Manager of General Motors Acceptance Corporation, supports defendants' allegations.

In response, Thomas does not deny defendants' allegations that he intentionally omitted this financial information on his IFP application, nor does he deny the amount of the funds he did not disclose to the court. Rather, he explains that he chose not to report these funds to the court because he "had no reason to believe that the retirement funds would be disbursed in January 2001, but at some future, as yet undetermined date" and that he "had no confidence that the request for a distribution of retirement assets would be expeditiously handled." (Pl.'s Resp. at 3.) Thomas also argues that a "request for distribution" does not qualify as "property" in

---

[4] The net proceeds paid to Thomas amounted to $58,990.00 after deductions. Thomas cashed the $58,990 check on or about January 30, 2001.

[5] According to Bacon's affidavit and other documentary evidence provided by defendants, the Separation Allowance Program provides for the monthly payment of separation allowance for the benefit of salaried employees separated from the payroll under certain circumstances. (Suppl. Aff. of R. Bacon at ¶ 4.) At the time of his termination, Thomas was eligible for the Separation Allowance Plan, and he received from November 15, 1999 to January 31, 2000 a net total of $6,976.66. (Id. at ¶ 5.) The Savings-Stock Purchase Program is an investment program in which employees may contribute toward certain investments. (Id. at ¶ 6.) During his employment, Thomas participated in the Savings-Stock Purchase Program, and on November 1, 1999, he withdrew $13,874.81 (gross) from his Savings-Stock Purchase Program. (Id. at ¶ 7.) A check for $8668.65 representing Thomas's Savings-Stock Purchase Program amount, less applicable deductions and withholdings, was issued to him on November 1, 1999. (Id. at ¶ 8.) On November 8, 1999, Thomas cashed the $8668.65 check. (Id. at ¶ 9.)

4

accordance with question five.[6] Thomas fails to submit an affidavit or any other evidence to support his contentions.

The unsupported assertions in Thomas's response brief are simply not believable. The items Thomas omitted were not trivial, and it is inconceivable that Thomas could have believed that he was not required to report these substantial funds on his IFP application. *See Mathis v. New York Life Ins. Co.*, No. 95 C 2770, 1996 WL 473430, at * 2 (N.D. Ill. Aug. 16, 1996) (finding it inconceivable that plaintiff could have believed he was not required to report his ownership of real property on his IFP application, even though plaintiff argued he did not own it free of liens). Two questions on Thomas's IFP application afforded Thomas the opportunity to report these funds.

The first opportunity for Thomas to report these funds was in response to question three of his IFP application. This question asks: "In the past 12 twelve months have you received any money from any of the following sources?" It then lists the following sources: (a) business, profession or other self-employment; (b) rent payments, interests or dividends; (c) pensions, annuities or life insurance payments; (d) disability or workers compensation payments; (e) gifts or inheritances; (f) any other sources. Thomas checked "No" to each of these, with the exception of checking "Yes" to "any other sources." A subsection of question three then states: "If the

---

[6]Thomas also asserts that on February 12, 2001 and June 19, 2001 he attempted to pay his legal expense to the court and that "[i]n each instance a clerk informed me that the computer was not programmed to accept payments of court fees for cases in which the individual had been granted In forma pauperis status." (Pl.'s Resp. at 4.) However, even if this unsupported assertion was true, Thomas provides no support for his apparent explanation that a belated payment of his legal fees somehow cures the misrepresentations on his IFP application. Therefore, the court need not address this argument.

5

answer to any of the above is 'Yes' describe each source of money and state the amount received and what you expect you will continue to receive." Thomas answered, "Rec'd $4205.50 severance – plaintiff does not anticipate to receive [sic] any additional money."

Thomas's response to question three misrepresents his true financial status in two ways. First, his representation that he received $4205.50 severance is factually inaccurate. According to Bacon's affidavit, Thomas received a total of $15,645.31 as a participant in the company's Separation Allowance Plan and Savings' Stock Purchase Program, more than three times the $4205.50 amount Thomas reported receiving. Second, his statement that he did not anticipate receiving any additional money is a bald misrepresentation of the truth. Again, according to Bacon's affidavit, which is supported by the evidence, on December 12, 2000 – nine days before filing his complaint and IFP application – Thomas "elected to have his vested gross retirement benefit of $73,714.00 distributed to him in a lump sum payment." (Aff. of R. Bacon at ¶ 8.) On January 25, 2001, Thomas's retirement benefit lump sum payment, minus applicable taxes and withholdings, was sent to him in the form of a $58,990.00 check, and Thomas cashed the $58,990.00 check on or about January 30, 2001. (*Id.* at ¶ 9-10.) Even if Thomas did not know the exact date he would receive this payment,[7] and even if he doubted that he would receive this payment in a prompt manner, he still had some expectation that he was going to receive this payment at some future date, and he had an obligation to disclose his expectation of this payment to the court in response to the explicit direction in question three to "state the amount [from any

---

[7]Thomas was informed that the distribution would be sent in April 1, 2001, but "because of Thomas' [sic] insistence and request, the lump distribution of his retirement account was ... sent to Thomas in January 2001, rather than in April 2001." (Suppl. Aff. of R. Bacon at ¶ 15-16.)

other sources] ... you expect you will continue to receive." *See Scaccia v. Thrall Mfg. Co.*, No. 98 C 7292, 1999 WL 569578 (N.D. Ill. July 30, 1999) (dismissing plaintiff's complaint for failing to disclose ownership of property in IFP application even though, at the time of the IFP application, there was a lien on the property). *Compare Turner v. Chicago S.D.A. Acad.*, No. 97 C 1505, 1998 WL 808993, at *1 (N.D. Ill. Nov. 17, 1998) (finding that plaintiff's statement on his IFP application that he was "buying home" in response to a question regarding real estate was sufficient to show he was not attempting to conceal the existence of his home). The court finds that Thomas's statement that he did not anticipate he would receive any more money is a material misrepresentation of his financial status and an attempt to conceal the existence of these funds from the court.

The second opportunity for Thomas to report these funds was in response to question five of his IFP application. This question asks: "Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other valuable property?" Thomas checked "Yes." A subsection of question five then states: "If 'Yes' describe the property and state its value." Thomas answered "1989 Oldsmobile 98 – $500." Thomas should have disclosed his request for funds in response to this question, as well as in response to question three. The court finds unconvincing Thomas's argument that a "request for distribution" does not qualify as "property" in accordance with question five. Rather, the court agrees with defendants that Thomas's "request for distribution" falls in the same category as "stocks, bonds, securities, other financial instruments, ... or other valuable property," in that, while all these items have no intrinsic value in themselves, they all represent a guarantee of future payment.

7

Therefore, even if Thomas did not report his request for distribution in response to question three, he still should have reported it in response to question five.

In sum, Thomas was required to report his true financial status on his IFP. Thus, he should have disclosed on his IFP application both the true amount he received as a participant in the company's Separation Allowance Plan and Savings' Stock Purchase Program, as well as his request a lump sum payment of his retirement benefits. Questions three and five in his IFP application of December 21, 2000 clearly elicited this disclosure. The court finds that Thomas's failure to report these funds in response to either question three or five constitutes a material and intentional misrepresentation of his financial status. Therefore, the court grants defendants' motion to dismiss Thomas's amended complaint with prejudice as a sanction for this conduct. *See New York Life Ins. Co.*, 133 F.3d at 548 (affirming dismissal of complaint with prejudice when plaintiff misrepresented his true financial status on his IFP application).

## III. CONCLUSION

Plaintiff's amended complaint is dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(A), as a sanction because plaintiff's allegation of poverty on his IFP application was untrue.

Date: **JUL 17 2001**

James H. Alesia
United States District Judge

8